Good morning, Your Honors. May it please the Court, my name is Tom Woodbury. I represent the appellants in this case. This case, I assume, is of no small academic interest to the Court as it involves the performance of judicial functions and the relation between the Court and Congress in carrying out those functions. And I'd like to start by just saying, you know, I'm not going to stand here and pretend to instruct this Court as to exactly where the line of demarcation between... Counsel, let me ask you a question about that. Sure. We all know the line is that Congress can't decide a case, but it can set out a new rule for decision. It can. And I look at the statute, section 407, and Congress says, shall not be deemed arbitrary and capricious under NFMA, NEPA, or any other applicable law so long as each project area retains 10% designated old growth below 5,500 feet elevation. Now, that may have the practical effect of controlling what the outcome is because you fall on... This case falls on one side rather than the other side of that rule. But it reads like a rule of decision. What's left? Nothing. When I went back to the lower court, I mean, that was... Judge Malloy in the district court said exactly that. There's nothing for me to do here because he recognized that the language you say, as long as there's 10%... You know, that was a forest plan requirement. That was not some new standard, unlike the case in Robertson. And not only was it an existing forest plan standard, the judge had already found that, and the parties did not dispute, that that was a fact of record. So, you know, it was basically no different than saying, you know, as long as there's still the trees standing in the areas, you know, they can be logged. It was just sort of a fiction. I think that Congress was trying to, you know, grasp, trying to make it look like that it was following what it had done in the Robertson case, but it did not. I'm sorry. Could you...  I'm sorry. I was involved in the Robertson case, and I clearly would have agreed with you before the Supreme Court decided that case. But would you just explain what is the difference that gives us a guideline we can apply in future cases? Yes, I'm happy to do that, Your Honor. I think the Supreme Court in Robertson was very careful and went out of its way to point out that it was not imposing itself or interfering with any judicial functions. By pointing out that even though they had sided to the cases, you know, specific cases that were ongoing in the Section 318 rider, they actually changed the law by promulgating new standards, which included new protections for the spotted owl. They changed the law by adopting it over the entire range of the spotted owl. And why isn't this a change in the law also? Well, for example, I think it's not a change in the law because it doesn't make any change. I mean, it doesn't. What it is is an exemption from the law. If anything, it says don't apply the law to this case. That's what Congress really did. I don't understand the word really. I'm sorry? I don't understand the word really. I mean, I just read what it did. I read the words, and it looked like a rule of decision. Basically, there are no new standards to govern. If Congress changes the rule of decision from you can take five Cuban cigars from Canada to the United States to you can take zero Cuban cigars from Canada to the United States, well, that's not a rule of decision. But it's a general rule, even if it has a very concrete effect on a particular case or individual. Right. I just don't see the difference. Well, the difference here is that if you wanted to argue that Congress made a change in the law in this case, then, for instance, by saying in the Kootenai National Forest, you don't have to have a minimum standard for old growth. Well, that would be a change in the law, and not only would it affect this case, but it would change the forest plan for the Kootenai National Forest. It would change the way the National Forest Management Act governs the Kootenai National Forest Plan, and we would not be able to bring another lawsuit on another sale under that change in the law because Congress has spoken. In this case, they did no such thing. They simply – and let me – I think it's also important to point out that there were other claims that the court never – that we never had an opportunity to address to the court dealing with soils productivity, for instance. Let me back up before I get to the other stuff. Exactly how is Robertson distinguishable? In many ways, Your Honor. First of all, Robertson – first of all, Robertson changed the law. Robertson changed the law by adopting a new set of standards, comprehensive standards to govern timber sales in a defined geographic region for a specific period of time. So anybody that would bring another lawsuit during that period of time challenging the – challenging timber sale under another forest plan would be barred by Robertson. Those claims would be barred because Robertson – the Congress gave the Forest Service and the BLM and Robertson a new set of standards and a choice. Why is this not a new set of standards, too? I mean, I thought that that was a change in the law for a particular – to dictate the result in a particular case. And the Supreme Court said no. Right. It's a new standard. Right. So this statute says, if I understand it, that the RODs, whether modified, shall not be deemed arbitrary and capricious under the ANIPA or other applicable law as long as each project area pertains 10 percent designated old growth below 5,500 feet elevation. Why isn't that a new standard that applies to each one? It's not a new standard because that's already in the forest plan, and the Court had already found that there was 10 percent in each of the sale areas. And that wasn't in dispute by the parties. It wasn't a dispute in the record. It was a record case. So that's not like a new standard. That's just saying as long as you're in compliance with some of the forest plan, you don't have to be in compliance with all of the forest plan, basically, is what that says. And it took something that wasn't in dispute and said, well, as long as they're – as long as they're issuing permits, you know, as long as they've issued permits, we're going to let this go forward. I mean, it doesn't – it's without any distinction. It's not like – you know, I went back and read the Solicitor General's briefs to the Supreme Court in Robertson, and they go out of the way to say, you know, Congress adopted a comprehensive scheme here, and they directed the rider to the land managers, not to the courts. And that's another important distinction, because what we're dealing with separation of powers is, has there been an interference with judicial function? The 318 rider at issue in Robertson was clearly directed to the land managers and said you can apply this standard or you can apply the existing standards. It was an appropriations rider. Yes. And that's what we have here. Yes. Then that's irrelevant under Robertson. Yeah. Yeah. That doesn't matter. But in this case, the 407 rider, it's directed to the courts. I mean, read it. It's directed to the courts. You will not apply this judicial standard of review in a way that's going to stop these timber sales from going forward. And as a consequence, you're not even going to get to the claims of whether or not they're ensuring soils productivity under the law and whether it's consistent with the National Forest Management Act. You're not even going to allow them to amend the complaint to address the fact that this sale, one of these sales may actually be imperiling one of the most endangered populations of grizzly bears in the United States. We're just not going to allow the judge to get to those issues. I mean, that's what kind of ‑‑ it's no different than if tomorrow. The court had a pending case about grizzly bears. And if somebody were under the misapprehension that they're an endangered species, so the court was going from Alaska to Alaska. And somebody ‑‑ and the court was going back and forth, a lot of litigation on effect of the Endangered Species Act. And Congress, while the case was pending, amended the Endangered Species Act to say grizzly bears shall not be deemed a species for purposes of application of this act. Is that unconstitutional because it has the incidental effect of controlling the decision in this pending case? Not at all. But if Congress passed a ‑‑ if Congress ‑‑ What's the difference? The difference is that it changes the law in a way that applies to more than just that particular case. The difference is it only incidentally, you know, this is the line drawing we're talking, only incidentally decides the merits of that case. It's not Congress saying we will decide the merits of that case. How does anyone know what's incidental? I mean, we don't know what private conversations there are and private thoughts there are in Congress. We're talking about line drawing, and that's why I say, you know, it's a slippery slope under Robertson. Your position is that Robertson was just incidentally decided that case? Yeah. Even though they cited it in the statute? The court went out of its way to say they only cited it to give direction to the courts in the scope of the issues that they were addressing, not to decide those cases themselves. It's kind of a legal fiction. But let me ‑‑ you know, that's why we're on this slippery slope under Robertson and why I can't pretend to stand here and tell you where that line is anymore. But if Congress tomorrow passed a rider telling this panel ‑‑ I just don't see how you can get yourself on the other side of it. That's my trouble. If Congress passed a rider tomorrow that instructed this panel not to apply the separation of powers doctrine in this case in a way that would result in finding Section 407 unconstitutional, you would have to admit that that was performing a judicial function, that Congress was telling you how to do your job. And Congress cannot tell the courts how to do their job in an act of litigation. That's exactly what Congress did here. They told the court, in applying a judicial standard of review under the APA, you will not find these sales to be violent of the law. And Robertson, Congress said, if you comply with these standards, then that is deemed to be compliance with the laws. And in H3, the same thing. Congress said, you know, we've looked at this as an ongoing controversy, and we believe that you are in compliance with the law here. And so, therefore, you know, Congress was stepping in and performing a congressional function. Here there is no congressional function. Congress did not look at our soils claims and say, you know, you're wrong. We passed that law, and we interpret the law differently than you do. You know, Congress did not allow the public process to go forward here. Congress preempted the courts. And when Congress preempts the courts and says, you will not decide this case in a way that we don't like, that's interfering with judicial function, that's the slippery slope of Robertson that puts us on the other side of that line of separation of powers. I can't tell you where that line is, but I can tell you that this was a clear invasion of judicial functions and, therefore, is on the wrong side of that line. And I'll leave it to your courts to tell you where that line is. I think we understand your position. Are there any questions at this time? Thank you. You may have the rest of your time for the bottle if you wish to use it. May I please have the Court? I'm Mark Hay from the Department of Justice representing the Forest Service. Also at counsel table is Julie Weiss, who is counsel for interveners. We're going to divide our time. I've asked for 13 minutes, but I will be brief. I don't think you have to feel constrained to use it. I won't, Your Honor. It's not a violation of separation of powers doctrine for Congress to enact legislation that affects a pending case. That's what it did here. Section 407 changes the underlying law. This Court, the Supreme Court, numerous decisions have upheld similar legislation. If there are – I would be happy to answer any questions, but if not, I will sit down. Thank you. Good morning, Your Honors. My name is Julie Weiss, and I represent the intervener appellees in this case. My purpose today was to address the second argument made by the Ecology Center regarding the alleged impropriety of the district court dissolving its own injunction. Unless the Court has questions, however, I will go ahead and leave you to the other cases. All right. Thank you, counsel. Do you wish to add anything? I first would like to just start by concluding the difference between the 318 rider before the court and Robertson and the 407 rider. Are you rebutting something that the government just said? I'm just following up on the Court's questions on whether there's a difference between this case and Robertson. Why don't you give yourself a minute to do that? Okay. The rider before the court today does not change the law by offering any alternative standards for the court to apply in determining the case or for the land managers to apply. It doesn't deem the project in compliance with the law, and it does not direct the court not to apply the law to the facts. Okay. On the issue of the propriety for dissolving an injunction under APA, I think that the briefs address that issue cogently enough for the court to decide that on its own. Thank you. The case just argued is submitted for decision.
judges: Schroeder, Alarcon, Kleinfeld